## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK L. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-4246-JES |
| | ) | |
| HY-VEE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendants' Motion for Summary Judgment. Doc. 47 (the "Motion"). Plaintiff opposes the motion (Doc. 49, the "Response"), and Defendants replied. Doc. 52 (the "Reply"). For the following reasons, the Motion is GRANTED.

### I.    Background

#### A.  Procedural History

Plaintiff Mark White, who is "Black/African-American" and a former employee of Defendant Hy-Vee, Inc. ("Hy-Vee"), filed an eight-count complaint against Hy-Vee and three of its employees. Doc. 1. All Defendants moved to dismiss the complaint. Doc. 8. On June 29, 2021, Plaintiff filed a First Amended Complaint ("FAC") which dropped all state law claims. Doc. 12. The FAC was comprised of three counts alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et al.* ("Title VII") and discrimination in violation of 42 U.S.C. § 1981. *Id.* Defendants filed a motion to dismiss, arguing that the decade's worth of events in the FAC were beyond the scope of the Equal Employment Opportunity Commission ("EEOC") charges (Docs. 17-1, 17-2) filed by Plaintiff, time-barred, and otherwise failed to state a claim. Doc 14. Plaintiff argued that the Title VII claims in the FAC were viable under a hostile work environment theory and the § 1981 claim was viable due to the four-year statute of limitations for § 1981 claims. Doc. 15. The Court found that the Title

1

VII claims were not within the scope of the EEOC charges as he had not checked the box for continuing action, did not mention harassment in the body of his charge, and complained of discrete acts of mistreatment such as a failure to hire/promote, discipline, and termination which did not square with a hostile work environment theory. Doc. 16. The Court further found that the § 1981 count failed to state a claim. *Id.* The Court granted Defendants Motion to Dismiss and provided Plaintiff with leave to amend. *Id.*

On June 6, 2022, Plaintiff filed the Second Amended Complaint ("SAC") against Hy-Vee and Hy-Vee employee Jared Welter. Doc 17. Plaintiff's SAC asserts a race discrimination claim in Count I and a retaliation claim in Count II against Defendant Hy-Vee, Inc. ("Hy-Vee"), under Title VII; and a race discrimination claim in Count III against Hy-Vee and Welter, under §1981. *Id.* The SAC limited the scope of the instances of alleged mistreatment and discrimination to a one-year period starting in 2019 and only included allegations against Hy-Vee and Welter. *Id.* First, Plaintiff asserted that Hy-Vee racially discriminated against him on several occasions between March 2019 and November 2019, in violation of 42 U.S.C. § 2000e-2. Second, Plaintiff averred that Hy-Vee retaliated against him, under §2000e-3, for his protected activity in reporting the racial discrimination during that same time period. Finally, Plaintiff alleged that the racially discriminatory actions of Hy-Vee and Welter unlawfully interfered with his contractual employment relationship with Hy-Vee, in violation of §1981.

Defendants responded by filing a second Motion to Dismiss, arguing that Counts I and II of the SAC were outside the scope of the EEOC charge and other parts of Counts I and II failed to state a claim. Doc. 22. On these two grounds, Defendants sought to dismiss some, but not all, of the allegations in Counts I and II and did not seek to dismiss Count III at all. Doc. 22. On

February 23, 2023, the Court denied that motion in its entirety, and the case proceeded to discovery. Doc. 27.

On May 10, 2023, Magistrate Judge Hawley adopted the Parties' jointly proposed discovery plan (Doc. 31), setting the close of discovery for March 29, 2024, and a dispositive motion deadline for May 10, 2024. *See* Text Order Dated May 10, 2023.

On May 10, 2024, Defendants timely filed a Motion for Leave to File an "Overlength" Motion for Summary Judgement (Doc. 46), which the Court subsequently granted. *See* Text Order Dated May 13, 2024. The Motion was then separately docketed, and the deadline for Plaintiff to file the Response was set to June 3, 2024. Doc. 47. Two days after the deadline for Plaintiff's respond had expired, he had failed to file an opposition or a motion for extension of time. And so, the Court *sua sponte* extended Plaintiff's deadline to file the Response to June 11, 2024, noting that the docket did not reflect that failing to meet deadlines had been an issue in this case. *See* Text Order Dated June 5, 2023. Plaintiff filed the Response (Doc. 49) on June 11, 2024, and Defendants timely filed the Reply on June 25, 2024. Doc. 52.

## B. Discovery Dispute

Before delving into the summary judgment briefing, the Court must first address Plaintiff's argument that Defendants failed to conduct timely and diligent discovery, which possibly prevented the emergence of essential facts. Doc. 49 at 8-10. In particular, Plaintiff notes, *id.*, that even though discovery was set to close on March 29, 2024, Defendants waited until March 27, 2024, to initiate written discovery requests (Doc. 44), not providing Plaintiff with thirty days to respond to the requests, as is required by the Federal Rules of Civil Procedure. Defendants contend that Plaintiff did not object to the discovery requests, and that any delay

could not have possibly caused evidence to be withheld. Doc. 52 at 7. The Court concludes that

Plaintiff's argument is fundamentally flawed, for three distinct reasons.

First and foremost, Plaintiff ignores Magistrate Judge Hawley's Standing Order, which

requires litigants to raise discovery disputes prior to the close of discovery. *See* Standing Order

in Civil Cases (Revised Apr. 7, 2022), available at https://www.ilcd.uscourts.gov/court-

info/local-rules-and-orders/judge_orders_rules (last accessed July 8, 2024).[1] The Standing Order

includes the following passage:

> **VIII. Discovery disputes brought to the Court's attention after the discovery deadline has already passed**
>
> The parties may not raise a discovery dispute with the Court after the relevant discovery deadline has passed; all discovery disputes must be brought to the Court's attention before the relevant discovery deadline passes. Any discovery disputes raised with the Court after the expiration of the relevant discovery deadline shall be deemed waived by the Court, even if the parties agreed to conduct discovery after the relevant discovery deadline has passed. If the parties agree to conduct discovery after the expiration of a deadline set by the Court, they must still file a motion requesting that the Court move that deadline as agreed by the parties in order to avoid any subsequent discovery disputes being deemed waived.

As the Standing Order makes clear, discovery disputes raised after discovery has closed,

which in this case was more than 2 months ago, are deemed waived. My conclusion here is not

unique to my caseload. *See, e.g.*, *Henry v. City of Creve Coeur*, JES-19-1234, Text Order (C.D.

Ill. Nov. 2, 2020) (denying the plaintiff's motion to strike the defendants' motion for summary

judgment and reopen discovery, as the plaintiff failed to comply with Section VIII of Magistrate

---

[1] Plaintiff does not argue that the Standing Order is unenforceable, nor does the Court believe that such an argument could have an iota of merit, as the order is consistent with the Federal Rules of Civil Procedure and binding case law. And, a district court's "'wiggle room' in ruling on discovery matters" certainly extends to the implementation and enforcement of discovery orders. *25 Western Avenue LLC v. Lester*, JC-22-2697, 2024 WL 182241, at *5 (N.D. Ill. Jan. 17, 2024); *see also Finwall v. City of Chi.*, 239 F.R.D. 504, 507 (N.D. Ill. 2006) ("A court has a legitimate interest in managing each case before it, including enforcing deadlines, to ensure prompt and orderly litigation.") (citing *Campania Mgt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th Cir. 2002)).

Judge Hawley's Standing Order). Here, Plaintiff's counsel should have been well-versed with the Standing Order, as it was provided to the Parties as early as April 2023. *See* Text Order Dated Apr. 12, 2023. And, Magistrate Judge Hawley entered a text order clearly stating, *inter alia*, that "[t]he parties are expective to review Judge Hawley's Standing Order that was revised on 4/7/2022." Text Order Dated May 10, 2023. Further, at the July 27, 2023, motion hearing concerning a protective order, the Parties, and Judge Hawley, referenced the Standing Order on numerous occasions. Doc. 40. For these reasons, it is inconceivable that Plaintiff was unaware of the Standing Order, which is integral to the question of whether Plaintiff should be held accountable to its terms. *Cf. United States v. Norwood*, 812 F. App'x 365, 370 (7th Cir. 2020) (stressing the importance of a district court's "multiple [] references" to a standing order prior to imposing a sanction for violating said order). This procedural failure, alone, is sufficient for the Court to find Plaintiff's discovery dispute to be waived. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (emphasizing that district courts "enjoy broad discretion ... in delimiting the scope of discovery in a given case") (citations and internal quotation marks omitted); *see also DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 955 (N.D. Ill. 2021) ("Standing alone, the failure to comply with a district court's discovery order is enough to impose sanctions under Rule 37(b).") (citing *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011)).

Yet, even more concerning, Plaintiff wholly fails to address why such a pertinent discovery issue (*i.e.*, at least in his mind) was not raised earlier. *Cf.  Foggey v. City of Chi.*, 851 F. App'x 61, 619 (7th Cir. 2021) (considering the plaintiff's failure to timely raise a discovery dispute when affirming district court's denial of a motion to compel discovery); *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 (7th Cir. 2000) (no abuse of discretion in denying

motion to compel filed after discovery closed, summary judgment motion was filed, briefing schedule was set, and plaintiff's response was due); *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ind. 2006) ( "Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted.") (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992)). Indeed, Plaintiff's argument hinges on Defendants' alleged untimeliness in discovery, and yet, Plaintiff effectively asks the Court to excuse his own dilatory action. This failure is further accentuated because, as noted, Plaintiff jointly proposed the discovery plan, which was ultimately adopted by the district court, and he should certainly be expected to comply with deadlines of his own invention. Accordingly, the Court concludes that Plaintiff's 70-plus day delay in raising his discovery issue, without justification, disregards court-ordered deadlines and exemplifies the kind of tardiness that bars consideration of the dispute. *Cf. Blankenship v. Am. Phoenix, Inc.*, 795 F. App'x 467, 470 (7th Cir. 2020); *Bd. of Educ. of City of Chi.*, 44 F. App'x 4, 6 (7th Cir. 2002).

Finally, to the extent Plaintiff vaguely alludes to yet-to-be unearthed evidence that is critical to his opposition, absent waiver and untimeliness, the Court would still decline to permit additional discovery. Plaintiff's failure to file a Rule 56(d) affidavit "detailing and explaining why [he] need[s] additional discovery" is a death knell to his claim. *Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) (citations omitted); *see also Suan v. Alcala*, No. 23-1612, 2024 WL 209440, at *2 (7th Cir. Jan. 19, 2024) (noting that a nonmoving party must include a Rule 56(d) affidavit as to "why he cannot yet present evidence essential to justify his opposition") (citing *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019)); *Moore v. J.T. Roofing, Inc.*, 94 F. App'x 377, 379 (7th Cir. 2004) (highlighting that a plaintiff should "explain precisely how

additional discovery would generate a genuine issue of material fact."). And, Plaintiff's mere speculation and conjecture as to how Defendants' delayed discovery **may have** resulted in an "incomplete factual record," Doc. 49 at 9, is deficient, conclusory, and without any indicia of "real and substantial prejudice." *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 602 (7th Cir. 2022) (citing *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015)); *see also Broadfield v. Williams*, 768 F. App'x 544, 550 (7th Cir. 2019) (affirming denial of discovery request as plaintiff "did not identify any specific information that he needed."). Thus, Plaintiff's arguments as to discovery are utterly unmeritorious.

### C. Summary Judgment Briefing

As a preliminary matter, the Court acknowledges Defendants' argument (Doc. 52 at 4-6) that the Response (Doc. 49) does not comport with the Local Rules of the Central District of Illinois and well-known standards applied in summary judgment briefing. As the Court has informed parties in previous cases:

> While strict, the requirements imposed on the parties by Rule 56 and Local Rule 7.1(D) are not meant to be punitive. "Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 923 (7th Cir. 1994) .... Because summary judgment is such a drastic remedy, the Court regularly informs the parties when they fail to adhere to these strict requirements, and exercises its discretion to decide whether to apply the rule strictly or to overlook any transgression. *Id.*

*McMahon v. Dunlap Cmty. Unit Sch. Dist. No. 323*, 274 F. Supp. 3d 836, 842–43 (C.D. Ill. 2017); *see also Lugg v. Sutton*, JES-18-1412, 2021 WL 3673824, at *2 (C.D. Ill. Aug. 18, 2021).

Relevant to Plaintiff's failures here, Local Rule 7.1(D)(2)(b) provides that a response to a summary judgment motion must state, in separate subsections: undisputed material facts, disputed material facts, disputed immaterial facts, undisputed immaterial facts, and additional

material facts. With regard to the disputed material facts section, the plaintiff is instructed to "[l]ist by number each fact from Section B of the motion for summary judgment which is conceded to be material but is claimed to be disputed. ***Each claim of disputed fact must be supported by evidentiary documentation referenced by specific page. Include as exhibits all cited documentary evidence not already submitted by the movant***." CDIL-LR 7.1(D)(2)(b)(2) (emphasis added); *see also* CDIL-LR 7.1(D)(2)(b)(5) ("Each additional fact must be supported by evidentiary documentation referenced by specific page."). Local Rule 7.1(D)(2)(b)(6) cautions, "[a] failure to respond to any numbered fact will be deemed an admission of the fact." *Id*. Likewise, Fed. R. Civ. P. 56(e)(2) provides that when a party fails to properly address ansother party's assertion of fact as required by Rule 56(c), the court may, *inter alia*, "consider the fact undisputed for the purposes of the motion."

Here, Plaintiff's Response failed to properly support his claims regarding disputed and additional facts. Indeed, the Court is unable to find a single instance where Plaintiff cites to a specific page in the evidentiary record to support his factual assertion. In one example, Plaintiff asserts that "Fact 3-59" are in dispute, and broadly cites to his "Exhibits A to Exhibit K" for support. Doc. 49 at 3. This does not suffice, as "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Thus, the Court must decline Plaintiff's invitation to scour his briefing (Docs. 50, 51) to unveil facts that may help his case. *See Mims v. City of Chi.*, SCS-18-7192, 2024 WL 1075152, at *10 (N.D. Ill. Mar. 12, 2024). Accordingly, the Court shall deem Defendants' statement of facts to be admitted. *See Poole v. United States GAO*, 1 F. App'x 508, 510 (7th Cir. 2001) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 527 (7th Cir. 2000)).

### D.  Material Facts

As indicated above, Plaintiff failed to properly 1) respond to Defendants' statement of undisputed material facts and 2) provide additional material facts. Therefore, the following facts are undisputed. *See* CDIL-LR 7.1(D)(2)(b)(6); Fed. R. Civ. P. 56(e)(2).[2]

Hy-Vee, at all relevant times, operated a grocery store at 750 – 42nd Avenue, Moline, Rock Island County, Illinois, which was internally referred to as both "Hy-Vee – John Deere Road" and the "Moline 2" store. SOF ¶ 1. At all relevant times, Hoegner served as the Human Resources ("HR") Manager of the Moline 2 store and Welter was the Moline 2 Store Director. SOF ¶¶ 3, 4. Plaintiff, a "Black/African-American [] male", Doc. 17 at 2, was employed by Hy-Vee for one year in the late 1980s and rehired twenty years later as a part-time produce clerk. SOF ¶ 2.

The Court now details the five allegedly discriminatory events that occurred in 2019 and form the basis of his FAC. Doc. 17.

**Plaintiff Not Selected for a Full-Time Role in March 2019**

In March 2019, Plaintiff applied for a full-time meat clerk position (the "March Position"). SOF ¶ 7. Welter declined to interview or select Plaintiff for the role based on both his and Hogner's observations of Plaintiff's prior performance, conduct, and attitude. SOF ¶¶ 8, 11, 12. Welter ultimately selected Cameron Gasper, a part-time meat clerk at the time, because both

---

[2] The Court takes the material facts from Defendants' Motion (Doc. 47), which are cited as SOF ¶ __. Defendants cited Exhibits ("Ex.") include: The SAC (Doc. 48 at 1-18, "Ex. A"); The Answer to the SAC (*id.* at 19-41, "Ex. B"); Plaintiff's Termination Documents (*id.* at 42-43, "Ex. C"); Hoegner's Investigation File (*id.* at 44-56, "Ex. D"); Plaintiff's June 14, 2019, Written Warning, (*id.* at 57, "Ex. E"); Plaintiff's June 26, 2019, Employee Performance Review (*id.* at 58, "Ex. F"); Hy-Vee's Employee Handbook (*id.* at 59-102, "Ex. G"); Plaintiff's Disciplinary History (*id.* at 104-128, "Ex. I"); Hogner Affidavit (*id.* at 130-145, "Ex. K"); Welter Affidavit (*id.* at 146-155, Ex. L). The Court does not consider Defendants' Exhibit H, *id.* at 103, or Exhibit J, *id.* at 129, as the Court "***need*** consider only" the materials cited in the briefing. Fed. R. Civ. P. 56(c)(3).

he and Hogner believed Gasper was well-qualified and would excel in the role because of his positive performance and attitude. SOF ¶¶ 9, 10.

### Plaintiff Warned for Insubordination in June 2019

On June 13, 2019, meat department manager Ahren Swan directed Plaintiff to perform cycle counting. SOF ¶ 13. Cycle counting is the process of confirming that physical inventory counts match the store's inventory records, and it is a routine task assigned to both full-time and part-time employees. SOF ¶¶ 13, 14. Plaintiff previously performed that task, but declined to do so then, because, absent a raise, he only wanted to stock shelves. SOF ¶¶ 14, 15. Swan informed Hoegner of the event, who issued Plaintiff a written warning for insubordination. SOF ¶¶ 16-19.

### Plaintiff's 2019 June Performance Evaluation

In mid-June 2019, Plaintiff asked Hoenger to evaluate his performance. SOF ¶ 21. Hoegner accepted Plaintiff's request, and on June 26, 2019, issued his evaluation. SOF ¶¶ 20, 21. In the review form, which contains six categories and utilizes a 1 (worst) through 5 (best) rating scale, Plaintiff received a rating of "3" in four categories, a rating of "5" in Attendance & Dependability, and a rating of "1" in Interpersonal Relationships & Communications. SOF ¶ 22.

### Plaintiff Not Selected for a Full-Time Role in October 2019

In October 2019, Plaintiff applied for the position of full-time meat specialist (the "October Position"). SOF ¶ 22. Welter chose not to interview or select Plaintiff for the October Position for the same reasons Plaintiff was deemed unqualified for the March Position, with an additional factor being that Welter and Hoegner both observed Plaintiff's performance and attitude deteriorate, rather than improve, in the intervening months between March and October 2019. SOF ¶¶ 25, 26, 30, 31. Welter eventually selected Mario Arizpe for the position, because

Arizpe had "great experience." SOF ¶¶ 27, 29.[3] Around this time, Plaintiff filed his Original EEOC Charge, claiming that he was disciplined and denied promotions due to Defendants' discriminatory and retaliatory animus. Doc. 17-1.

**Plaintiff's Termination in November 2019**

On November 13, 2019, two part-time White/Caucasian dairy clerks, Dylan Michel and Dale Manley got into a heated dispute on the sales floor of the Moline 2 store. SOF ¶ 33. During the verbal altercation, Michel threatened to break Manley's nose and Manley shouted obscenities towards Michel, including the "f-word." *Id.* A customer overheard the argument, and reported it to Front-End Assistant Manager Blaker, stating that it made her very uncomfortable. SOF ¶ 34.

Shortly thereafter, Plaintiff approached Michel's cousin and fellow employee, Tiffany Butler, in the store's backroom and told her that she needed to tell Michel to calm down. SOF ¶ 35. Michel overheard Plaintiff talking to Butler and "barked back" at Plaintiff to stop talking about him. *Id.* In response, Plaintiff threw a box down onto the floor, puffed his chest, and charged quickly and aggressively at Michel. *Id.* Plaintiff's actions made Michel feel uncomfortable to the point that he was observed crying. *Id.*

Later that day, Tim Housby (then Director of Store Operations) used the store's intercom system to direct Michel, Manley, Plaintiff, and another employee (Darren Zink) to report to the HR office. SOF ¶ 36. After the four employees and Housby arrived at the HR Office, Zink was dismissed, because his presence was requested only to serve as a witness to the meeting, but Hoegner was unexpectedly in the office and was able to fill that role. SOF ¶ 37. While Housby was addressing Michel, Manley and Plaintiff, Hoegner received a call from employee Patricia

---

[3] One other individual, Leonard Debroek IV, also applied for the position. SOF ¶ 27. Debroek, however, was not considered because he previously applied for the same position and did not have a strong interview. SOF ¶ 28.

Proctor, who stated that she observed Plaintiff acting aggressively towards Michel in the backroom. SOF ¶ 38.

Plaintiff and Michel "went back and forth at each other" during the meeting, with Plaintiff calling Michel "worthless." SOF ¶ 39. Plaintiff then stated that if he would end up in jail if he ran into Michel outside of work, which was understood by Hoegner as a threat, due to the suggestion that Plaintiff would physically attack Michel. SOF ¶¶ 40, 41. And so, Hoegner stated that if such an altercation took place – even outside of work – it would have an impact on the workplace, to which Plaintiff responded that it would have nothing to do with work. *Id.* Hoegner repeated himself, and Plaintiff stated that Hoegner was full of crap and Hy-Vee policy meant nothing outside the workplace. *Id.* Hoegner repeated himself a third time. *Id.* Plaintiff denied threatening Michel, and continued to interrupt Hoegner. SOF ¶ 41.

Manley and Plaintiff eventually apologized to one another. SOF ¶ 42. At that point, Hoegner started to wrap up the meeting but was interrupted by Plaintiff. SOF ¶ 43. Plaintiff stated that the situation was being turned on him, and he requested to go home for the day. *Id.* Plaintiff was permitted to go home, and Michel and Manley were allowed to finish their shifts. *Id.* That same day, Hoegner spoke with Hy-Vee employees Proctor, Shannon Bundy, Butler, Simeko Block, and Pfaff as part of his investigation into the incident. SOF ¶¶ 43, 44.

The next day, November 14, 2019, Hoegner met with Welter to discuss the incident and possible discipline. Hoegner stated that his investigation, which included a review of the participants' disciplinary histories, led him to conclude that Plaintiff and Michel both acted in a threatening and aggressive manner, whereas Manley shouted expletives.  SOF ¶¶ 45, 46, 47. 48.[4] Hoegner recommended, and Welter agreed, that all three employees: Michel, Manley, and

---

[4] Plaintiff was counseled and disciplined multiple times during his employment with Hy-Vee. SOF ¶ 5. When relevant to the Court's analysis, these incidents are elaborated upon *infra*.

Plaintiff should be terminated the next day for behavior unbecoming of a Hy-Vee employee. SOF ¶ 48.

Prior to conducting the termination meetings on November 15, 2019, Hy-Vee contacted the Moline Police Department ("MPD") indicating its concern that one or more of the meetings could turn hostile. SOF ¶ 49. The MPD stated that they would respond to an emergency, but could not be on "standby", and Hy-Vee informed the MPD of the meeting times in case there were available officers nearby. SOF ¶ 50.

On November 15, 2019, shortly after Plaintiff had clocked into work, Hoegner asked Plaintiff to come with him to the Hy-Vee Club Room for a discussion with Housby. SOF ¶ 51. Plaintiff sighed, rolled his eyes, and followed Hoegner. *Id.* Once inside the Club Room, Hoegner closed the door and asked Plaintiff to take a seat. SOF ¶ 52. Plaintiff declined, and chose to stand while Hoegner and Housby sat down. *Id.* Throughout the 15-minute meeting, Plaintiff remained standing, used a loud tone, and smacked his fist into his hand several times. *Id.* Hoegner then read the November 15, 2019, Consultation Form which indicated Plaintiff's employment would be terminated immediately for conduct unbecoming of a Hy-Vee employee. SOF ¶ 53. Plaintiff refused to sign the Form, and stated that he had filed a complaint with the EEOC. SOF ¶ 54. When the meeting concluded, Plaintiff threatened to "fuck [] up" Hoegner and Housby if they followed him, and so Hoegner and Housby maintained a safe distance and observed onsite police officers escort Plaintiff outside. SOF ¶ 55. At the time of Plaintiff termination on November 15, 2019, he held the position of part-time meat department clerk. SOF ¶ 6.

Several months later, on January 22, 2020, Plaintiff filed an Amended EEOC Charge, which newly included his discharge. Doc. 17-2. The EEOC issued its Notice of Right to Sue letter on August 27, 2020. Doc. 17-3. This suit followed on November 25, 2020. Doc. 1

## II.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations, or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck*, *N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

The non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256-57 (1986) (quotation and citation omitted)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999); *see also Noll v. Bd. Of Regents of Univ. of Wis. Sys.*, No. 21-3176, 2022 WL 2113081, at *2 (7th Cir. June 13, 2022) ("[T]he non-moving party cannot sit back and rest solely on its briefing in opposition for its claims to advance to trial."). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the non-movant." *Parker v. Brooks Life Sciences, Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (citation and brackets omitted).

### III.    Discussion[5]

Before addressing the contours of whether this suit survives summary judgment, the Court pauses to note that Plaintiff's Response is almost entirely devoid of any militating legal argumentation. Doc. 49. Apart from a cursory reference to temporality in connection with his retaliation claim, Plaintiff largely relies on vague assertions that the evidentiary record shows a dispute of material fact as to each of his claims. *Id.* Indeed, Defendants, in discussing Plaintiff's briefing, ask the Court to consider his conclusory, irrelevant, and otherwise underdeveloped arguments to be waived. Doc. 52. Certainly, it is not within the Court's ambit to craft arguments for a party, and so Plaintiff must rest on his briefing – however deficient it may be. *See Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) ("[The defendant's] arguments are wholly lacking, and we have made clear that such 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'") (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) in turn quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *Keller v. United States*, 58 F.3d 1194, 1116 n.3 (7th Cir. 1995) ("It is certainly not our task to make arguments that the parties do not make."); *cf. Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (noting that the court cannot craft arguments and perform legal research to salvage a deficient appellate brief) (citing *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990)). Even so, the Court is mindful that "[t]he ultimate burden of persuasion remains with [the movant] to show that it is entitled to judgment as a matter

---

[5] The Court need not explicate Defendants' argument that the scope of Plaintiff's EEOC charge is limited to Plaintiff's June 14, 2019, written warning and his November 15, 2019, termination. Doc. 47 at 21-26. This is because the Court already found this argument to lack merit in its Order of February 27, 2023. Doc. 27 at 9-12. Defendants proffer no new evidence to further their claim, nor do they otherwise address the Court's prior Order. Thus, for the same reasons that the Court previously refused to dismiss Plaintiff's claims as outside the scope of the EEOC charge, Defendants' Motion, insofar as it is premised solely on this argument, is DENIED.

of law." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). In other words, "Rule 56 imposes an affirmative obligation on a movant that [the Court] cannot ignore merely because a nonmovant provides no responsive arguments." *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

### A. Discrimination (Counts I and III)

Under Title VII, it is unlawful for an employer "to ... discharge any individual ... because of such individual's race." 42 U.S.C. § 2000e-2. "To succeed on a Title VII claim, the plaintiff-employee must prove three elements: [1] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (citation omitted). Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of all laws ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "The same requirements for proving discrimination apply to claims under Title VII[ and] § 1981," *Smith v. City of Janesville*, 40 F.4th 816, 821 (7th Cir. 2022) (citation and internal quotation marks omitted), and so the Court reviews these claims together. *See, e.g.*, *Gonzalez v. City of Hammond*, TLS-17-252, 2022 WL 445507, at *6 (N.D. Ind. Feb. 14, 2022); *Martinez v. Northwestern Memorial Healthcare*, JFK-19-4923, 2021 WL 4635798, at *3 (N.D. Ill. Oct. 7, 2021). Yet, the Court is mindful of a key distinction: "In order to succeed on a § 1981 claim, [] a plaintiff has the burden of showing that race was a but-for cause of the injury," *Singmuongthong v. Bowen*, 77 F.4th 503 507 (7th Cir. 2023) (citations omitted), whereas "claims under Title VII simply require that race be a motivating factor in the

defendant's challenged employment decision." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citation and internal quotation marks omitted).

"Although there are many tests and rubrics for viewing discrimination claims, it is important to recall that, at the end of the day they are all merely convenient ways to organize our thoughts as we answer the only question that matters: when looking at the evidence as a whole, 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *see also Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Indeed, a plaintiff "may prove discrimination in a holistic fashion, by proffering direct or circumstantial evidence of intentional racial discrimination." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (citation omitted).

One method a plaintiff may utilize to present this evidence is the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367–68 (7th Cir. 2019). Under this approach, to set forth a *prima facie* case of race discrimination, an employee "must show that "(1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022) (citation omitted). As to a *prima facie* case for failure to promote, a plaintiff must demonstrate that "(1) he is a member of a protected class, (2) he was qualified for the position sought, (3) he was rejected for the position, and (4) someone outside

17

the protected class who was 'not better qualified' was hired instead." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020) (quoting *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016)).

"If the plaintiff meets each element of h[is] prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719-20 (7th Cir. 2018) (citation omitted). Although "[a] plaintiff may put forth and a court may analyze evidence using the *McDonnell Douglas* framework, [] neither must do so." *Tyburski v. City of Chi.*, 964 F.3d 590, 598 (7th Cir. 2020) (citation omitted). Here, the Court utilizes "the *McDonnell Douglas* framework as a supplemental tool." *Kinder v. Marion Cnty. Prosecutor's Off.*, MPB-22-1952, 2024 WL 2836481, at *4 (S.D. Ind. Apr. 2, 2024) (citation and internal quotations omitted).

Of relevance here, the Seventh Circuit has stated "in more than one hundred reported opinions" that a district court is "not a super-personnel department that [can] substitute [its] criteria for an employer's for hiring, promoting, or disciplining employees." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 933 (7th Cir. 2020) (citations omitted). Rather, "[i]n order to determine whether [a plaintiff] was meeting his employer's legitimate expectations, '[t]he proper inquiry mandates looking at [the plaintiff's] job performance through the eyes of [his] supervisors at the time of [his] ... termination.'" *Harper v. C.R. England, Inc.*, 687 F.3d 297, 310 (7th Cir. 2012) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008)). "'The question is not whether the [employer's performance] ratings were right but whether the employer's description of its reasons is honest.'" *Khungar v. Access Cmty. Health Network*, 985

18

F.3d 565, 574 (7th Cir. 2021) (quoting *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)).

**March 2019 and October 2019, Failure to Promote**

Plaintiff alleges that he was discriminated against when Defendants failed to promote him to full-time meat department positions in March 2019 and October 2019. In the Motion, Defendants argue that Plaintiff cannot establish that he was qualified for either position, which is fatal to his claim. Doc. 47 at 28-31, 39-42. The Court agrees.[6]

Defendants have compiled an evidentiary record that demonstrates Plaintiff was not qualified for a promotion based on his prior performance, conduct, and attitude. The record shows that Plaintiff often spoke poorly of his work environment, including statements that the store and the store's manager "sucked." SOF ¶¶ 7-9; Doc. 48 at 135. Additionally, Plaintiff often complained about performing various job tasks such as retrieving carts from the store parking lot. *Id.* And, Plaintiff had a history of insubordination: For example, on November 5, 2018, Plaintiff did not want to work in the meat department, and when given the option to work in the dairy department if he could maintain a good attitude, Plaintiff responded that he would rather go home and so he proceeded to clock out. SOF ¶ 5. These factors led Defendants to consider Plaintiff as unqualified for a full-time position in March 2019, and more so in October 2019, after his performance had further deteriorated. SOF ¶¶ 25, 26; *see also* Doc. 48 at 64 (Hy-Vee "Company Policies" document detailing employee expectations). Plaintiff has offered no evidence to show he was qualified for a full-time position. Nor has Plaintiff otherwise set forth a basis for the Court to question the veracity of Defendants' proffer. The Court recognizes that

---

[6] The Court does not address Defendants' argument that the promoted/hired individuals were better qualified, or that Plaintiff cannot establish pretext, as Plaintiff clearly fails to establish that he was qualified for a promotion.

Plaintiff's performance evaluation of June 2019 clearly shows that he, on average, met expectations. But Plaintiff's ability to largely meet expectations for his part-time role does not in any way render him qualified for a full-time position. *Cf. Lloyd v. Mayor of City of Peru*, 761 F. App'x 608, 610 (7th Cir. 2019) (noting that a plaintiff who received "two positive statements from superiors about his work" still provided "no evidence" that he was qualified for a promotion). Accordingly, even when viewing the facts in Plaintiff's favor as the non-movant, his failure to promote claim fails under the *prima facie* framework.

## June 2019 Warning and Evaluation

Plaintiff alludes to the June 2019 warning and evaluation as sufficient evidence of discrimination. Doc. 17.[7] Defendants respond that the warning and evaluation cannot independently sustain Counts I or III as a matter of law, because neither act left Plaintiff "worse off." Doc. 47 at 31-39.[8]

To be sure, "'a negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act.'" *Swenson v. Bd. of Educ. of City of Chi.*, MMR-20-6558, 2023 WL 4352104, at *4 (N.D. Ill. July 5, 2023) (quoting *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004)). An exception arises, however, if there is "'some tangible job consequence'" that accompanies the act. *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1119 (7th Cir. 2022) (quoting *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998)).

---

[7] The Court previously denied Defendants' motion to dismiss this claim, noting that at an early stage of litigation it was inappropriate to determine the relevance of the discipline and the review. Doc. 27 at 12-15. The Court also stated that the Defendants were free to raise those same arguments at summary judgment. Defendants have accepted the Court's invitation.

[8] For both of these incidents, Defendants also argue that Plaintiff cannot establish he was meeting Hy-Vee's legitimate expectations or that a similarly situated employee was treated more favorably. The Court need not address these arguments, as Plaintiff plainly fails to demonstrate that the warning and evaluation constitute adverse employment actions for the purpose of establishing racial discrimination.

Here, there is no record evidence that Plaintiff suffered a material harm in connection with either action. There is no indication that the warning or evaluation led to a change in benefits or compensation, job duties or conditions, or diminished training opportunities. *Cf. Reives v. Ill. State Police*, 29 F.4th 887, 894 (7th Cir. 2022) (noting that "adverse employment actions 'generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce further career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge.'") (quoting *Barton v. Zimmer*, 662 F.3d 448, 453–54 (7th Cir. 2011)). And, it is irrelevant that the warning may have informed Plaintiff's termination approximately five months later, as a reprimand is only actionable if the adverse material consequence is "immediate." *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023). Furthermore, Plaintiff's performance evaluation was largely middling, rather than negative, and there is no record evidence showing that the evaluation was dishonest or intended to serve any purpose other than assisting Plaintiff's job performance. *Cf. Owens v. Bd. of Educ. of the City of Chi.*, JLA-15-1089, 2016 WL 4611387, at *5 (N.D. Ill. Sept. 6, 2016) ("[E]ven if having a negative performance review on one's record makes a future adverse action more likely, as in this case, the negative review itself is not an adverse action to the extent that it is an honest, constructive attempt to improve an employee's performance."), *rev'd on other grounds*, 867 F.3d 814 (7th Cir. 2017). Accordingly, neither the June 2019 warning or evaluation pass muster under the *prima facie* framework.

**November 2019 Discharge**

In the SAC, Plaintiff points to his November 15, 2019, termination as an adverse employment action rooted in discrimination. Defendants urge the Court to dismiss this claim

21

because, as a matter of law, Plaintiff cannot show he was meeting Hy-Vee's legitimate expectations. Doc. 47 at 42-46. The uncontroverted record supports Defendants' argument.[9]

As detailed in the facts section *supra*, on November 13, 2019, Plaintiff inserted himself into an altercation, and in doing so, found himself in a situation where he threw down a cardboard box, charged a fellow employee, Michel, with his chest puffed out, and caused that employee to cry. Also of concern, when Plaintiff met with store management to address the incident, he suggested that would end up in jail if he saw Michel outside of work. Hoegner, taking into account Plaintiff's statements and mannerisms, reasonably understood this to constitute a threat of physical violence. Hoegner ultimately recommended to Welter that Plaintiff be terminated for his behavior that day. Welter agreed, and Plaintiff was terminated two days later.

The facts of the November 13, 2019, backroom incident and meeting remain undisputed And, even viewing the factual inferences in Plaintiff's favor, the Court, without any mitigating explanation by Plaintiff, cannot find a reasonable jury would disagree with Hoegner's perception of Plaintiff's behavior at the November 13, 2019, meeting. Similarly, Plaintiff has not articulated a particular basis to suggest that Hoegner's investigation and recommendation, as well as Welter's decision, were somehow tainted by discriminatory animus. Therefore, the Court readily concludes that no reasonable jury would be able to find that Defendants' decision to terminate Plaintiff for his behavior on November 13, 2019, was rooted in discrimination, because such threatening conduct fails to meet a reasonable employer's legitimate expectations. *See Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006) (affirming grant of summary judgment

---

[9] The Court need not wade into Defendants' alternative argument that Plaintiff cannot point to a similarly situated employee that was treated differently.

where plaintiff engaged in threatening behavior towards coworker); *Palmer v. Circuit Court of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997) (same).

In light of the Court's foregoing discussion, the results of the *McDonell Douglas* burden-shifting framework weigh in favor of the Court granting the Motion. Yet, a *prima facie* analysis is not dispositive of a race discrimination claim, so the Court must address the evidence in toto.

**Holistic Review and Conclusion**

At the end of the day, Plaintiff has not cited any evidence that would permit a reasonable jury to conclude that Defendants considered Plaintiff's race in their employment decisions. If anything, a holistic review of the evidence shows that Plaintiff was given several "second chances" and opportunities for growth over a prolonged period of time, despite his considerable disciplinary record. *See, e.g.*, SOF ¶ 5. The undisputed factual record suggests that Plaintiff's behavior on November 13, 2019, was the proverbial "straw that broke the camel's back," rather than the culmination of a grand plot to discriminate against Plaintiff based on his race.

In light of the Court's foregoing totalistic review of the evidence, including through the lens of the *prima facie* framework under *McDonell Douglas*, Plaintiff has failed to marshal evidence in the record indicating, even when viewed in his favor, a genuine dispute of material fact as to whether he was discriminated against in violation of Title VII or § 1981. Accordingly, the Court must grant Defendants' Motion as to Counts I and III.

**B. Retaliation (Count II)**

Title VII prohibits employers from retaliating against an employee because he "has made a charge, testified, assisted, or participated in any manner in an investigation" of racial discrimination. 42 U.S.C. § 2000e-3(a). To prevail on a Title VII retaliation claim, a plaintiff

must prove that: (1) he engaged in protected activity;[10] (2) he suffered an adverse employment action;[11] and (3) there was a causal link between the protected activity and adverse action. *Runkel v. City of Springfield*, 51 F.4th 736, 746 (7th Cir. 2022). In evaluating a Title VII retaliation claim, the Court must evaluate the overall evidence; "Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Nicholson v. City of Peoria, Ill.*, 860 F.3d 520, 523 (7th Cir. 2017) (citation omitted). For example, courts consider "'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual.'" *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)). in turn citing *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012)).

"If a plaintiff establishes a prima facie case of retaliation, an employer may produce evidence that it had a legitimate non-discriminatory reason for the adverse employment action." *Gnutek v. Ill. Gaming Bd.*, 80 F.4th 820, 824 (7th Cir. 2023) (citation omitted). Should "the employer meet[] this burden, the plaintiff[] must produce evidence that would permit a trier of fact to establish, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination." *Robertson v. Dept. of*

---

[10] To establish "a statutorily protected activity—'[t]he plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII.'" *Logan v. City of Chi.*, 4 F.4th 529, 538 (7th Cir. 2021) (quoting *Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019)).

[11] "[A]n adverse employment action is that which would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

*Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (citation omitted). "'To establish pretext, [the plaintiff] must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the employer]'s proffered reasons that a reasonable person could find them unworthy of credence ....'" *Shreffler v. City of Kankakee, Ill.*, No. 21-3376, 2024 WL 1826976, at *8 (7th Cir. Apr. 26, 2024) (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)). "What's more, 'a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus.'" *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 573 (7th Cir. 2021) (quoting *Hitchcock v. Angel Corps., Inc.*, 718 F.3d 733, 740 (7th Cir. 2013) in turn citing *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir.2010)).

Here, Plaintiff claims that the June 2019 written warning and performance evaluation, the October 2019 failure to promote, and the November 2019 discharge all constitute retaliatory actions. Doc. 17 at 3. Defendants argue that Plaintiff cannot establish causation, since an intervening event prompted each of these purported adverse employment actions. Doc. 47 at 48-51. In the Response, Plaintiff argues that the close timing between his protected activities and the adverse employment actions is sufficient to demonstrate causation. Doc. 49 at 7. Yet, even assuming arguendo that all of Defendants' actions were adverse and followed protective activity in tight temporal proximity, and viewing all plausible inferences and facts in favor of Plaintiff as the non-movant, he cannot show that a retaliatory motive was the cause of these actions, and so he fails to establish the third element of his claim. This is because 1) Plaintiff has not provided any non-temporal evidence to support causation, 2) there is not a dispute of genuine material fact as to Defendants' justification for the supposed adverse employment actions at issue, and 3) Plaintiff has not provided any evidence that Defendants' justifications were a pretext for retaliation.

"To prove causation, the plaintiff must show that the desire to retaliate was the but-for cause of the challenged employment action. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 511-12 (7th Cir. 2021) (citations and internal quotation marks omitted). The close proximity between a protected activity and an adverse employment action can support an inference of causation. *See Xiong v. Bd. of Regents of the Univ. of Wis. Sys.*, 62 F.4th 350, 355 (7th Cir. 2023) ("…a compact timeline [can] suffice[] as one of the instances where the timing is tight enough to support an inference of causation."). However, "'any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action.'" *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 892 (7th Cir. 2024) (quoting *Jokich v. Rush Univ. Med. Cent.*, 42 F.4th 626, 634 (7th Cir. 2022)); *see also Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) ("When there are reasonable, non-suspicious explanations for the timing' of the defendant's conduct, proximity in time is not enough to support a retaliation claim.") (quoting *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018)). Similarly, substantial superseding events can readily dispel such an inference of causation based on temporal proximity. *See Brooks v. City of Pekin*, 95 F.4th 533, 540 (7th Cir. 2024).

As to the June 2019 written warning and performance evaluation, Plaintiff alleges these actions were closely preceded by his complaints in May 2019 to Hy-Vee and Welter concerning discriminatory treatment. Doc. 17.[12] However, the undisputed record shows that Plaintiff refused to cycle count when asked by his manager, which provoked the written warning, and that

---

[12] Plaintiff does not cite record evidence to substantiate the May 2019 complaints. And, at this stage in the litigation, Plaintiff "can no longer depend on the allegations in [his] complaint." *Blanton v. RoundPoint Mortgage Servicing Corp.*, 825 F. App'x 369, 372 n.1 (7th Cir. 2020).

Plaintiff himself asked for Hoegner to evaluate him, which prompted the performance review. Plaintiff's own actions interfere with a causal link between his protective activity in May 2019 and the June 2019 adverse employment decisions. Thus, without cited evidence to contradict Defendants' grounds for those actions, Plaintiff cannot establish causation as to these retaliation claims. *Cf. Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 594 (7th Cir. 2008) (granting summary judgment where a plaintiff could not establish causation due to intervening event of unexcused absences).[13]

With respect to Plaintiff not being selected for the October position, Defendants have proffered evidence showing that his application was denied for the same reasons that he was denied in March 2019, *i.e.*, a time before Plaintiff's alleged protective activity. And, further undermining Plaintiff's claim, Defendants indicated that Plaintiff's performance only worsened in the intervening period. Thus, the Court cannot permit this claim to proceed merely on the possibility that Defendants' decision came on the heels of the Original EEOC Charge. Had Plaintiff appropriately referenced evidence showing his performance actually improved or that it was never so poor to begin with, the Court may have been inclined to think otherwise. *Cf. Dillard v. v. Chi. Transit Auth.*, 105 F. App'x 107, 111 (7th Cir. 2004) (noting a plaintiff's failure to show he was qualified for a position is "fatal" to a retaliation claim based on a failure to promote").

Finally, the undisputed record shows that in the period between Plaintiff's Original EEOC Charge of October 29, 2019, and his termination of November 15, 2019, Plaintiff engaged in threatening behavior that prompted his termination. This significant event more than suffices

---

[13] Because Plaintiff fails to show causation, the Court need not address Defendants' argument that neither the written warning nor the performance evaluation constituted an adverse employment action for the purpose of establishing a retaliation claim. Doc. 47 at 47-48.

to sever any inference of causation due to the temporal proximity between the two events. *Cf.*
*Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (finding no
inference of causation when the plaintiff's violation of the employee guidelines "was a
significant intervening event separating [plaintiff]'s complaints from his discharge").

"Ultimately, the [Court's] inquiry comes down to one question: 'Does the record contain
sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused'
the materially adverse action?" *Lesiv v. Ill Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022)
(quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). In this case, for
the foregoing reasons, it does not. Therefore, Plaintiff's retaliation claim cannot move forward,
and so Defendants' Motion must be granted as to the retaliation claim (Count II).

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 47) is
GRANTED. The Clerk is directed to CLOSE the case.


Entered on this 11th day of July 2024.


s/ *James E. Shadid*
James E. Shadid
UNITED STATES DISTRICT JUDGE
